CHARLES C. PETERSON, APPELLEE, v. WILLIAM O. BRUN-ZELL, COUNTY TREASURER, APPELLANT.

FILED MARCH 1, 1919. No. 20351.

1. **Taxation: ASSESSMENT: INCREASE: POWER OF BOARD OF EQUALIZA-TION.** Under article X, ch. 69 (sections 6436-6443), Rev. St. 1913, a county board of equalization has no authority to increase the valuation of an assessment of all the real estate in a precinct in the absence of a finding that the valuation of such real estate does not bear a just relation to the valuation of the real estate in all townships, precincts, or districts in the county.

2. **————: BOARDS OF EQUALIZATION: STATUTES: CONSTRUCTION.** "Statutes in regard to powers and duties of boards of equalization are to be strictly construed, and in the exercise of their powers and duties the mode of procedure prescribed must be followed." *Grant v. Bartholomew*, 58 Neb. 839.

APPEAL from the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Willis E. Reed, Attorney General, A. J. Shafer, W. A. Dilworth* and *W. P. Hall,* for appellant.

*James I. Rhea* and *G. Norberg, contra.*

DEAN, J.

Plaintiff began this action for himself and others similarly situated to enjoin the county treasurer of Phelps county from proceeding to enforce the collection

of certain taxes, a portion whereof were alleged to have been illegally assessed and levied upon certain real estate in Holdrege precinct in 1916. The collection of the portion of the tax alleged to be illegal was enjoined, and the defendant county treasurer appealed.

The assessment complained of was made in pursuance of a resolution by the county board adopted June 14, 1916, containing this among other recitals: "That, whereas, the finances of the schools of Holdrege, and the city as well, would be crippled by reason of the low assessed valuation of real estate in Holdrege precinct as returned by the precinct assessor for the year 1916: Therefore, be it resolved that we do not accept the assessment of Holdrege precinct as returned by the precinct assessor, but order his real estate assessment book returned to him for reappraisement of valuations, with the recommendation that he use the year 1912 assessment as a basis for such reappraisement in the valuation of lots with a slight decrease in the valuation of improvements, approximately 10 per cent., and return his books, as amended, to the board of equalization by July 3, 1916."

S. P. Carlson was deputy assessor for Holdrege precinct in 1916, and on May 27 of that year he made his return to the county assessor, which the board refused to accept. On June 14 following, five members of the county board called at Carlson's home, and on their invitation he attended a meeting of the board of equalization. At this meeting, as shown by the court's finding, the board "directed him to revalue the real estate in Holdrege precinct, basing the valuation 10 per cent. less than the valuation placed on the property for the assessment of 1912."

The deputy assessor made the changes in the assessment roll pursuant to the direction of the board, and returned the roll, as changed, to the county assessor, by whom it was delivered to the board of equalization before their meeting on July 3, 1916. On that date

the board accepted and approved the changed valuation as made by the deputy assessor, and subsequently made the tax levy on the real estate in Holdrege precinct that is complained of. The levy so made was based on the changed and increased valuation. The revaluation of the real estate in Holdrege precinct, as found by the court, "raised the values from 10 to 100 per cent."

Plaintiff tendered $43.41 to the county treasurer in payment of the taxes on his property; that being the amount due "under the valuation as returned by the precinct assessor in May, 1916." This sum was refused, and $54.36 was demanded by the treasurer; that sum representing "the taxes on the valuation as subsequently raised." Plaintiff did not appear before the board, and had "no actual personal knowledge of such increased valuation until some time in December, 1916."

Article X, ch. 69 (sections 6436-6443), Rev. St. 1913, prescribes the duties of a county board of equalization. Section 6437, Rev. St. 1913, being a part of article X, provides, among other things, that such board shall: "Third—Ascertain whether the valuation of one township, precinct or district bears just relation to all townships, precincts or districts in the county; and may increase or diminish the aggregate valuation of property in any township, precinct or district, by adding or deducting such sum upon the hundred as may be necessary to produce a just relation between all the valuations of the property in the county."

That the board of equalization exceeded its authority in the premises is clear. The assessment complained of was increased in a manner that is not recognized by the statute for raising the valuation of an entire precinct. Nor can the increased assessment be sustained on any of the other grounds that are named in the statute because the notice that the statute contemplates was not given to plaintiff. Rev. St. 1913, sec. 6437. It is elementary that statutes conferring powers upon a county board of equalization are to be strictly construed, and

the procedure therein pointed out must be followed.
*Grant v. Bartholomew,* 58 Neb. 839.

The judgment of the district court is right and is in
all things

AFFIRMED.

SEDGWICK and CORNISH, JJ., not sitting.